UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LLOYD GEORGE MORGAN, JR., | : |
| Petitioner, | : |
| v. | : No. 3:10cv1486 (MRK) |
| JOHN ALVES and LEO C. ARNONE, | : |
| Respondents. | : |

**RULING AND ORDER**

On September 17, 2010, *pro se* Petitioner Lloyd George Morgan, Jr. filed his Petition for a Writ of Habeas Corpus [doc. # 1] pursuant to 28 U.S.C. § 2254. Mr. Morgan is currently imprisoned in Connecticut, and he challenges his state conviction for possession of a dangerous instrument in a correctional facility. Mr. Morgan's Petition asserts two grounds for habeas relief: (1) that his conviction for possession of a dangerous instrument in a correctional facility should be overturned because his attempted assault convictions in the same case were overturned by the Connecticut Appellate Court; and (2) that his state habeas appellate counsel provided ineffective assistance.

Pending before the Court is Respondent John Alves' and Respondent Leo C. Arnone's Motion to Dismiss [doc. # 10] Mr. Morgan's Petition. In support of the motion, Respondents argue that Mr. Morgan has not properly exhausted his claim for ineffective assistance of counsel. For the reasons set forth below, the Court DISMISSES Mr. Morgan's petition with prejudice, and DENIES AS MOOT Respondents' Motion to Dismiss.

**I.**

The Court assumes the parties' familiarity with the underlying facts of Mr. Morgan's case and

will not recite those facts in great detail here. A detailed factual background is provided in the opinion of the Connecticut Appellate Court on Mr. Morgan's direct appeal. *See State v. Morgan*, 86 Conn. App. 196 (2004) ("*Morgan I*").

In 2001, Mr. Morgan was incarcerated at the MacDougall-Walker Reception Special Management Unit correctional center. On March 29, 2001, there was an incident between Mr. Morgan and his cell mate, who had of late had a strained relationship. According to Mr. Morgan, he injured his cell mate during an act of self-defense: Mr. Morgan testified at trial that his cell mate was verbally abusive and threatening, and then he jumped down from his upper bunk holding a razor and swinging a sock containing an electrical adaptor at Mr. Morgan. Mr. Morgan was able to take the sock away from the cell mate, but the cell mate attempted to cut him with the razor. Mr. Morgan then swung the sock and hit his cell mate several times. According to the cell mate, Mr. Morgan attacked him after he refused Mr. Morgan's request for sexual favors. Specifically, the cell mate alleged that Mr. Morgan pulled back the covers from the cell mate, who was in bed, and threw a cup of boiling water on his face, then slashed the cell mate's face with a razor and hit him with the sock and electrical adaptor.

On May 10, 2002, a Connecticut Superior Court jury convicted Mr. Morgan of two counts of criminal attempt to commit assault in the first degree, in violation of Connecticut General Statutes §§ 53a-59(a)(1) and 53a-49(a)(2); and one count of possession of a dangerous instrument in a correctional institution, in violation of Connecticut General Statutes § 53a-174a. On July 23, 2002, the Superior Court sentenced Mr. Morgan to a term of ten years imprisonment, consecutive to the sentence he was already serving.

With the assistance of counsel, Attorney Pamela Nagy, Mr. Morgan appealed his conviction

to the Connecticut Appellate Court. *See Morgan I*, 86 Conn. App. 196. Mr. Morgan made six arguments on direct appeal:

> (1) The trial court's instruction on self defense fatally misled jurors;
>
> (2) The jury was misled on attempted assault by the court's erroneous instructions;
>
> (3) The court's instructions were not properly balanced because they highlighted Mr. Morgan's interest in the outcome of the case without mentioning the victim's interest in the outcome;
>
> (4) The failure to charge on inconsistent statements by a state's witness was error;
>
> (5) The trial court erroneously refused to conduct an in camera review of the victim's medical and psychological records; and
>
> (6) The two convictions for attempted assault violated double jeopardy.

*See* Pet'r's Appellate Br., App'x B to Mot. to Dismiss.

The Appellate Court ruled that the trial court did not give a proper self-defense instruction to the jury with regard to the two attempted assault counts and reversed Mr. Morgan's convictions on those counts. *See Morgan I*, 86 Conn. App. at 204-05.

On December 20, 2004, Mr. Morgan filed a petition for certification to appeal the Appellate Court's decision to the Connecticut Supreme Court. The issue Mr. Morgan presented for review was whether the Appellate Court should have reversed his conviction for possession of a dangerous weapon on the same ground that it reversed his attempted assault convictions. *See* Pet. for Certification, App'x D to Mot. to Dismiss. On February 10, 2005, the Connecticut Supreme Court denied Mr. Morgan's petition for certification to appeal the Appellate Court's decision. *See State v. Morgan*, 273 Conn. 902 (2005) ("*Morgan II*"). On March 6, 2006, Mr. Morgan pleaded *nolo*

*contendere* to assault in the second degree, in violation of Connecticut General Statutes, § 53a-60, and was sentenced to one year imprisonment. *See* Information dated Mar. 2, 2006, App'x F to Mot. to Dismiss.

Mr. Morgan filed his first state habeas petition on June 17, 2002, while his direct appeal was still pending. *See Morgan v. Warden*, No. CV02-0003670-S, 2006 WL 1828146 (Conn. Super. Ct. June 9, 2006) ("*Morgan III*"). On October 26, 2005, with the assistance of counsel, Attorney Joseph Visone, Mr. Morgan amended his petition to raise a claim of ineffective assistance of counsel. Mr. Morgan claimed that his counsel had a conflict of interest at the time of the representation; that counsel failed to advise him of the maximum penalties for the crimes for which he was charged; that counsel failed to have him evaluated by a psychiatrist prior to trial; counsel failed to properly choose jurors; that counsel failed to obtain the victim's psychiatric records and use them to attack his credibility; and that counsel failed to highlight the lack of credibility of the state's witnesses and to effectively cross-examine them. On June 9, 2006, the Superior Court rejected all of Mr. Morgan' arguments and denied his first petition. The court granted certification to appeal.

On appeal to the Connecticut Appellate Court, Mr. Morgan was represented by Attorney Allan Dillon. On April 18, 2007, Mr. Morgan filed a motion to dismiss Attorney Dillon as his appellate counsel; that motion was denied by the Court on May 30, 2007. On November 1, 2007, upon review of the habeas action, Attorney Dillon filed a motion to withdraw as counsel on the ground that there were no non-frivolous claims for appeal in accordance with *Anders v. California*, 386 U.S. 738 (1967). That motion was filed with the Connecticut Superior Court. On November 29, 2007, Mr. Morgan filed an objection to Attorney Dillon's motion to withdraw. On January 29, 2008, the Connecticut Superior Court granted Attorney Dillon's motion to withdraw and also concluded

that the appeal was "wholly frivolous" and therefore did not appoint substitute counsel. Mem. of Decision on Mot. to Withdraw as Appellate Counsel, Ex. L to Mem. in Supp. of Mot. to Dismiss, at 13. Mr. Morgan did not seek review of the Superior Court's ruling on that motion.

Meanwhile, on January 10, 2007, Mr. Morgan had filed two additional state petitions for a writ of habeas corpus. On July 17, 2009, those motions were consolidated into one case. On August 28, 2009, Mr. Morgan filed an amended petition with the assistance of his new counsel, Attorney Arthur Ledford. In that petition, Mr. Morgan claimed that he received ineffective assistance from his habeas counsel, Attorney Visone, and his habeas appellate counsel, Attorney Dillon. On March 25, 2010, Mr. Morgan withdrew that state habeas petition.

On September 17, 2010, Mr. Morgan filed his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 with this Court. On October 15, 2010, the Court issued to Respondents an Order to Show Cause [doc. # 4] why the Court should not grant the relief sought by Mr. Morgan. Respondents filed the pending Motion to Dismiss [doc. # 10] on February 18, 2011. Mr. Morgan filed his Memorandum in Opposition [doc. #17] to the Motion to Dismiss on April 20, 2011.

Mr. Morgan' Petition asserts two claims for habeas relief: (1) his conviction for possession of a dangerous weapon in a correctional facility should be overturned because his conviction for the two counts for attempted assault was overturned by the Connecticut Appellate Court; and (2) that his habeas appellate counsel, Attorney Dillon, provided ineffective assistance because he filed an *Anders* motion that was granted by the court, and thus Mr. Morgan failed to raise on appeal a claim that he was denied his right to conflict-free habeas counsel. Respondents urge the Court to dismiss Mr. Morgan' petition without prejudice on the basis that it is a "mixed" petition containing some claims that have been exhausted in the state courts and others that have not. *See Rhines v. Weber*,

5

544 U.S. 269, 271-72 (2005). In the alternative, Respondents ask the Court to stay the case.

For the reasons that follow, the Court finds that both of Mr. Morgan's claims are meritless and dismisses Mr. Morgan's petition with prejudice. Therefore, Respondents' request for the Court to dismiss the petition without prejudice or to stay the case is moot.

## II.

Under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, § 104, 110 Stat. 1214, 129, a federal court may not grant "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court" unless the state court's "decision . . . was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d); *see Yarborough v. Alvarado*, 541 U.S. 652, 655(2004); *Portalatin v. Graham*, 624 F.3d 69, 79 (2d Cir. 2010) (en banc); *Ancona v. Lantz*, No. 3:05cv363 (MRK), 2005 WL 1554029, at *1 (D. Conn. July 5, 2005). Thus, when faced with a state prisoner's petition for a writ of habeas corpus, a federal court must ask three questions: "(1) Was the principle of the Supreme Court case law relied upon by the petitioner 'clearly established' when the state court ruled?; (2) If so, was the state court's decision 'contrary to' that established Supreme Court precedent?; (3) If not, did the state court decision constitute an 'unreasonable application' of that principle?" *Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001).

Regarding the first inquiry, only holdings of the Supreme Court, not the Second Circuit, can provide a basis for habeas relief. *See DelValle v. Armstrong*, 306 F.3d 1197, 1200 (2d Cir. 2002) ("[A]fter AEDPA, [a Second Circuit decision] cannot serve as a basis for federal habeas relief under Section 2254 [unless] it has [a] counterpart in Supreme Court jurisprudence."). Moreover, the

Second Circuit has instructed that "the statutory phrase 'clearly established Federal law, as determined by the Supreme Court of the United States,' refers to 'the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision.'" *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008) (citations and alteration omitted). That said, "although the Supreme Court must have acknowledged the right, it need not have considered the exact incarnation of that right or approved the specific theory in order for the underlying right to be clearly established." *Ryan v. Miller*, 303 F.3d 231, 248 (2d Cir. 2002).

The Second Circuit has explained that on the second inquiry, a state court decision is contrary to existing Supreme Court precedent when the state court decision "applies a rule of law that contradicts the governing law set forth in Supreme Court cases," or when it "confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from the Supreme Court's precedent." *Ortiz v. N.Y.S. Parole in Bronx, N.Y.*, 586 F.3d 149, 156 (2d Cir. 2009) (quotation marks, citations, and alterations omitted). "In either event, a state court ruling is 'contrary to' Supreme Court precedent only if it is 'diametrically different, opposite in character or nature, or mutually opposed' to the precedential holding." *Lurie v. Wittner*, 228 F.3d 113, 127 (quotation marks omitted) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Regarding the third inquiry, as this Court discussed at length in *Ancona v. Lantz*, the Supreme Court has provided substantial guidance to lower courts about how to analyze claims under the third, "unreasonable application" inquiry. *See Ancona*, 2005 WL 839655, at *3-5. In sum, two key principles emerge from the Supreme Court's decisions.

First, "a federal habeas court making the 'unreasonable application' inquiry should ask

7

whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. An objectively unreasonable application of federal law is different from an incorrect or erroneous application of federal law. *See Brown v. Payton*, 544 U.S. 133, 147 (2005). As the Second Circuit has summarized, "the AEDPA standard requires 'some increment of incorrectness beyond error.'" *Christie v. Hollins*, 409 F.3d 120, 125 (2d Cir. 2005) (citations and alterations omitted).

Second, in assessing the reasonableness of a state court adjudication, the range of reasonable judgment can depend upon the nature of the rule at issue. For a specific legal rule, "the range may be narrow" – either "plainly correct or incorrect." *Yarborough*, 541 U.S. at 664. Other rules are more general, however, affording state courts "more leeway" in reaching determinations on a case-by-case basis. *See id.*

### III.

With those principles in mind, the Court turns to consider Mr. Morgan's claims.

### A.

Mr. Morgan's first claim for relief asserts that the Connecticut Appellate Court incorrectly failed to overturn Mr. Morgan's conviction for possession of a dangerous instrument in a correctional facility when it overturned his convictions on two counts of attempted assault. Although the precise nature of the claim remains cryptic, the Court construes this ground as a due process claim alleging that the Connecticut Appellate Court wrongly concluded that the trial court's jury instructions on self-defense with regard to the possession of a dangerous instrument count were constitutionally adequate. *See Erickson v. Pardus*, 551 U.S. 89, 94 (1997) ("A document filed *pro se* is to be liberally construed . . . ."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d

8

Cir. 2006) (noting that a court must interpret a *pro se* pleading "to raise the strongest arguments that [it] suggests"). As Mr. Morgan raised that claim in a petition for certification to appeal the Connecticut Appellate Court's decision to the Connecticut Supreme Court, and the Connecticut Supreme Court denied Mr. Morgan's petition for certification, the claim is properly exhausted. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Cotto v. Herbert*, 331 F.3d 217, 237 (2d Cir. 2003).

Under Connecticut law, the justification of self-defense may defeat a charge of possession of a dangerous instrument in a correctional facility as well as a charge of attempted assault, and the Connecticut Appellate Court assumed that Mr. Morgan was entitled to a self-defense instruction on all three counts. *See Morgan I*, 86 Conn. App. 203-206. The Connecticut Appellate Court overturned Mr. Morgan's convictions on two counts of attempted assault because the trial court inadequately instructed the jury on the issue of self-defense with regard to those counts. Mr. Morgan suggests that because the Connecticut Appellate Court found that the trial court's instructions on self-defense were inadequate with regard to the attempted assault counts, the Connecticut Appellate Court should have found that those instructions were also inadequate with regard to the charge of possession of a dangerous instrument in a correctional facility. Mr. Morgan's argument is without merit.

The standard for due process challenges to jury instructions is well established. "In a criminal trial, the State must prove all elements of a criminal offense, and a jury instruction violates due process if it fails to give effect to that requirement." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (citation omitted). However, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Id.* Even if there some ambiguity or other deficiency in the jury instruction, "the defendant must show that there was a 'reasonable likelihood' that the jury

9

applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington v. Sarausad*, 555 U.S. 179, 232 (2009) (quotation marks and citations omitted). A reviewing court must not evaluate a particular jury instruction in "artificial isolation," but rather must judge the challenged instruction "in the context of the overall charge." *McNeil*, 541 U.S. at 437 (quotation marks and citation omitted).

When it considered Mr. Morgan's challenge to the jury instructions on self-defense, the Connecticut Appellate Court relied on the following standard:

> . . . . [I]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury . . . .
> Due process requires that a defendant charged with a crime must be afforded the opportunity to establish a defense. This fundamental constitutional right includes proper jury instructions on the elements of self-defense so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified. The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. While the instructions need not be exhausted, perfect or technically accurate, they must be correct in law, adapted to the issues and *sufficient for the guidance of the jury*.

*Morgan I*, 86 Conn. App. at 202-203 (alterations, quotation marks, and citations omitted). That standard does not "contradict[] the governing law set forth in" *Waddington*, *McNeil*, and the other controlling Supreme Court cases. *Williams*, 529 U.S. at 405 (quoting *Webster's Third New International Dictionary* 495 (1976)); *see Waddington*, 555 U.S. at 831-32; *McNeil*, 541 U.S. at 437.

Indeed, if anything, the rule of law applied by the Connecticut Appellate Court was more favorable to Mr. Morgan than the federal Constitution required, as the Supreme Court has clearly affirmed that the proper standard of review for jury instructions is "whether there is a reasonable *likelihood*" – and not merely a reasonable *possibility* – "that the jury . . . applied the challenged

10

instruction in a way that violates the Constitution." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quotation marks and citation omitted) (emphasis added). Because the Connecticut Appellate Court applied a proper standard in determining whether the trial court's jury instructions on the possession of a dangerous instrument count violated Mr. Morgan's due process rights, and because the Connecticut Appellate Court did not "confront[] a set of facts . . . materially indistinguishable from a decision of [the Supreme] Court" and yet "arrive[] at a result different from [that] precedent," *Williams*, 529 U.S. at 406, the Appellate Court's decision was not contrary to clearly established federal law.

Nor did the Connecticut Appellate Court's decision involve an unreasonable application of clearly established federal law. In its charge to the jury, the trial court first described the elements of attempted assault in the first degree and then moved on to the possession of a dangerous instrument in a correctional facility count. *See* Tr. Excerpt from Trial Court's Instructions, App'x B to Mem. in Supp. of Mot. to Dismiss, at A9-A20. The trial court did not mention self-defense during its instructions on the elements of attempted assault in the first degree. *See id.* On the possession of a dangerous instrument count, the trial court instructed the jury as follows:

> The State must prove beyond a reasonable doubt the following elements. . . .
> One, that the defendant, at the time of the alleged offense, was an inmate in a correctional institution. . . . .
> [T]wo, that the defendant knowingly had in his possession a dangerous instrument . . . .
> And three, that the defendant knowingly possessed a dangerous instrument designed to injure. . . .
> [T]he State is . . . not claiming that the adapter in the sock is a dangerous instrument. So, therefore, this . . . . only applies to the razor. . . .
> If you find that the – now, in a moment I'm going to get into self-defense . . . .You might not know where that came from. And that's going to be next.
> If you find that the defendant, Mr. Morgan, did not use the razor at all, or if you find that the defendant did use the razor, and the State has not disproven that the

11

>razor was used in self-defense, beyond a reasonable doubt, then you must find the
>defendant, Mr. Morgan, not guilty of count three, which is the dangerous instrument
>in the institution.

*Id.* at A21-A22. The trial court then went on to instruct the jury on Connecticut's self-defense standard generally. During those general instructions on self-defense, the trial court did not state explicitly that the jurors were required to find the defendant not guilty on the charges against him if they determined that the defendant was justified in his use of force. *See id.*

After reviewing the trial court's instructions, the Connecticut Appellate Court noted that "with respect to the charge on self-defense per se, the [trial] court did not instruct the jurors that they should find the defendant not guilty if they found that he was justified in his use of force." *Morgan I*, 86 Conn. App. at 205. However, the Appellate Court explained that "[w]ith respect to its charge concerning possession of a dangerous weapon or instrument in a correctional institution, the [trial] court instructed the jury that it must find the defendant not guilty of that charge if it determined that his use of force was justified," and "it matter[ed] not that the [trial] court did not repeat that instruction in its charge on self-defense in general." *Id.* The Connecticut Appellate Court observed that in contrast, the trial court did *not* state during its instructions on the attempted assault counts that if the jury found Mr. Morgan was justified in his use of force, it must find him not guilty. *See id.* The Connecticut Appellate Court's conclusion that the trial court adequately instructed the jury on self-defense with regard to the possession of a dangerous instrument count but inadequately instructed the jury on self-defense with regard to the attempted assault counts was in no way objectively unreasonable.

**B.**

In their brief, Respondents observe that the Connecticut courts have not yet had one full

12

opportunity to consider Mr. Morgan's second claim for relief, which asserts that he received ineffective assistance from his state habeas appellate counsel. However, Respondents acknowledge in a footnote that "[Mr. Morgan's] claim is not cognizable in any event." Mem. in Supp. of Mot. to Dismiss [doc. # 10-1] at 13 n.3. Respondents nonetheless argue that the Court must dismiss Mr. Morgan's petition without prejudice or stay the case because "exhaustion is a threshold requirement." *Id.* Respondents are incorrect. A petition for habeas corpus pursuant to 28 U.S.C. § 2254 "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

As Respondents accurately note, although there is a statutory right to counsel in habeas proceedings under Connecticut law, *see* Conn. Gen. Stat. § 51-296(a), "[t]here is no [federal] constitutional right . . . to an attorney 'in state post-conviction proceedings' where such proceedings are not the first appeal as of right." *Murden v. Artuz*, 497 F.3d 178, 194 (2d Cir. 2007) (quoting *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)). "Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman*, 501 U.S. at 752. Thus, regardless of whether Mr. Morgan exhausted his ineffective assistance of habeas appellate counsel claim in the state courts, that claim does not state a ground for federal habeas relief. Moreover, amendment of the claim would be futile, as there is no indication that Attorney Dillon's allegedly deficient performance related to some separate underlying violation of Mr. Morgan's federal rights.

**IV.**

Having determined that both of Mr. Morgan's claims for relief are without merit, the Court DISMISSES WITH PREJUDICE Mr. Morgan's Petition for a Writ of Habeas Corpus [doc. # 1].

Respondents' Motion to Dismiss or Stay [doc. # 10] is DENIED AS MOOT. Mr. Morgan's pending Motion to Appoint Counsel/Motion for Thorough Psychiatric Evaluation [doc. # 16] is also DENIED AS MOOT.

IT IS SO ORDERED.

/s/      Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: June 20, 2011.**